IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MICHAEL R. CARREL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil No. 15-cv-130-CJP**[1] |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Michael R. Carrel seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) benefits pursuant to 42 U.S.C. § 423.

### Procedural History

Plaintiff applied for benefits in June 2012, alleging disability beginning on November 10, 2010.   (Tr. 8).   After holding an evidentiary hearing, ALJ Lee Lewin denied the application on October 21, 2013.   (Tr. 8-16).   The Appeals Council denied review, and the decision of the ALJ became the final agency decision.   (Tr. 1).   Administrative remedies have been exhausted and a timely complaint was filed in this Court.

### Issues Raised by Plaintiff

Through counsel, plaintiff raises the following points:

---

[1] This case was referred to the undersigned for final disposition on consent of the parties, pursuant to 28 U.S.C. §636(c).   See, Doc. 13.

1.     The ALJ did not properly apply SSR 83-12 to determine which medical-vocational rule applied where plaintiff's residual functional capacity fell between two rules.

2.     The ALJ failed to verify the reliability of the vocational expert's testimony.

3.     The ALJ erred in the weight she assigned to the opinion of plaintiff's treating doctor.

4.     The ALJ did not provide an evidentiary basis for her RFC assessment.

5.     The ALJ erred in assessing plaintiff's credibility.

### Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes.[2]   For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   42 U.S.C. §423(d)(3).   "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.   20 C.F.R. § 404.1572.

In a DIB case, a claimant must establish that he was disabled as of his date

---

[2]  The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.

2

last insured.  *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997).    It is not sufficient to show that the impairment was present as of the date last insured; rather plaintiff must show that the impairment was severe enough to be disabling as of the relevant date.  *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011).

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.    The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.    20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th

3

Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.   If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).   See also, *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.   It is important to recognize that the scope of review is limited.   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).   Thus, this Court must determine not whether Mr. Carrel was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.   See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).

The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971).   In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.   *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).   However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.   See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Lewin followed the five-step analytical framework described above.   She determined that Mr. Carrel was insured for DIB only through December 31, 2013, and that he had not engaged in substantial gainful employment since the alleged date of disability.   She found that plaintiff had severe impairments of obesity, hernias, and degenerative disc disease, and that these impairments did not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level, limited to only occasional stooping, kneeling, crouching, crawling, balancing and climbing ladders, ropes, scaffolds, ramps and stairs.   In addition, he required a sit and stand option at will while remaining on task.   Based on the testimony of a vocational expert (VE), the ALJ found that plaintiff was not able to do his past relevant work.   He was, however, not disabled because he was able to do other jobs which, according to the VE's testimony, exist in significant numbers in the local and national economies.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.   The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period.

### 1.    Agency Forms

Plaintiff was born in 1962, and was 47 years old on the alleged onset date. (Tr. 206).

Plaintiff worked as an auto mechanic from 1997 through 2008.   He worked briefly as a security guard in November 2010.   (Tr. 208).

In a Function Report submitted in July 2012, plaintiff said that constant back pain made him unable to stand for very long, bend, or lift.   He also alleged difficulty walking, sitting and climbing stairs due to back pain.   He drove his wife to work and did some cooking.   He did the dishes daily.   He went shopping but leaned on the cart.   (Tr. 225-235).

In a report filed in October 2012, plaintiff said that his wife had to put his socks on his feet and he had to wear slip-on shoes because he could not bend down. His wife had to help him put his shirt on.   He could not sleep for more than 2 hours at a time.   He said he was "constantly in pain" and "constantly tired."   (Tr. 242-247).

In March 2013, plaintiff stated that he could not see a surgeon for his back because he had no insurance and no money.   (Tr. 258).

### 2.    Evidentiary Hearing

Mr. Carrel was represented by an attorney at the evidentiary hearing on

September 10, 2013.   (Tr. 24).

Plaintiff was 5'11" tall and weighed 276 pounds.   He lived with his wife and 21 year old daughter.   He cooked and sometimes did dishes.   He drove his wife to and from work, which was 7 miles from their home.   He did not do much else on a typical day.   Sometimes he "tinkered" in the garage.   He built a small shelf for his daughter.   He used a riding mower to mow the grass.   (Tr. 26-31).   He usually did things for 5 to 10 minutes and then sat down for 5 to 10 minutes.   (Tr. 46-47). He sat in a chair while cooking.   (Tr. 48).

Mr. Carrel was laid off from his job in September 2008.   He drew unemployment benefits for almost 2 years.   He took a job as a security officer in November 2010, but had to quit after 2 days because he could not do the walking and stair climbing that the job required.   (Tr. 34).

Plaintiff testified that he was unable to work because he had constant pain in the center of his back and in his low back.   He had back pain for years, but it got worse.   His primary care physician, Dr. Todd Smith, prescribed Vicodin.   Vicodin made him feel groggy for 3 to 4 hours.   He also took Ibuprofen.   (Tr. 36-40).

A pain specialist gave him an injection about a year earlier.   He had not been back to the specialist because he had no insurance and no money.   He had not looked for a free clinic.   He saw Dr. Smith at a clinic and it cost $15.00 per visit. (Tr. 41-42).   Dr. Smith wanted him to see a specialist in Cape Girardeau, but, at that time, he did not have a way to get there and he did not have any money.   (Tr. 43).

A vocational expert (VE) also testified.   The ALJ asked the VE a hypothetical

question which comported with the ultimate RFC assessment, that is, a person of plaintiff's age and work history who was able to do work at the light exertional level, limited to only occasional stooping, kneeling, crouching, crawling, balancing and climbing ladders, ropes, scaffolds, ramps and stairs.   In addition, he required a sit and stand option at will while remaining on task.   The VE testified that this person could not do plaintiff's past work, but he could do other jobs such as small parts assembler, labeler, and mail clerk.   However, the VE also testified that, if the sit/stand option caused plaintiff to be "off task," he would not be able to perform any jobs.   A person who was off task for more than 15% of the workday could not perform any competitive work.   (Tr. 50-53).

According to the VE, her testimony was consistent with the Dictionary of Occupational Titles, except for her testimony regarding time off task.   The testimony regarding time off task was based on her "knowledge and experience." (Tr. 53).

On cross-examination, plaintiff's counsel pointed out that SSR 83-12 states that "unskilled jobs typically demand that a worker be in a certain place or posture."   She objected to the VE's testimony because it departed from the DOT, which does not address a sit/stand option, and it departed from SSR 83-12. The VE testified that the jobs of small parts assembler, labeler and mail clerk could all be performed with a sit/stand option as long as the worker remained on task.   She testified that a sit/stand option would not reduce the available number of jobs and that every one of those jobs "has a stool so that a person could sit down or stand up and still do what they were doing with their hands."   She said that her testimony

8

was based on her professional training, on observing jobs and on her review of labor market surveys and job analysis.   The ALJ overruled counsel's objection. (Tr. 55-58).

### 3.    Medical Treatment

In June 2010, plaintiff saw Dr. Todd Smith for refills of medication, including Norco.   Dr. Smith noted that Mr. Carrel had low back pain (Tr. 349).

Plaintiff returned to Dr. Smith in May 2011.   He told Dr. Smith that he could not do mechanic work because of pain, and that he had tried a security job but he quit after 3 days because the stairs hurt his back.   On exam, he had no pain down into his legs and no tenderness to palpation.   Dr. Smith ordered an MRI of the lumbar spine.   (Tr. 348).

The MRI was done on May 18, 2011.   This study showed mild right and marked left foraminal stenosis at L5-S1.   The L-5 nerve root was compressed in the foramen which was said to be "a likely source for pain/radiculopathy."   (Tr. 357-358).

In June 2011, plaintiff told Dr. Smith that his back pain had been worse for the past 6 months.   He was interested in a referral to a neurosurgeon.   His Illinois medical card was set to expire at the end of the month.   Dr. Smith referred him to Dr. Jones "on a sliding scale."   (Tr. 347).   On July 1, 2011, Dr. Smith's office notes indicate that a staff member informed plaintiff that he could see Dr. Jones with the "SIH patient assistance program," but he would have to apply and be approved for the program first "or pay out of pocket."   (Tr. 365).

An MRI of plaintiff's thoracic spine was done in February 2012.   This study

9

showed mild right T3-4 and moderate right T4-5 foraminal stenosis, but no thoracic cord compression or central canal stenosis.   There was also a possible sliding hiatal hernia.   (Tr. 297-298).

Mr. Carrel saw Dr. Gerson Criste in March 2012.   On exam, he had a full range of motion for the back, but had pain in the thoracolumbar region on flexion extension and in the lumbar area on extension.   Straight leg raising was normal and he had no muscle spasm.   The assessment was lumbar stenosis and degenerative disc disease in the thoracic and lumbar spines.   Dr. Criste recommended an epidural steroid injection.   As plaintiff was complaining more of his thoracic pain, the injection was done at T11-12.   (Tr. 322-333).

In May 2012, plaintiff reported to Dr. Smith that Dr. Criste had given him a shot which helped his back pain for about a week.   He was not going to see Dr. Criste again because he did not have insurance, but Dr. Smith informed him that Dr. Criste had a "sliding scale".   (Tr. 343).

Plaintiff saw Dr. Smith in July 2012 to have paperwork completed for his disability claim.   (Tr. 342).

In August 2012, Dr. Smith noted that lab tests showed that plaintiff had low testosterone.   He also complained of "hernia pain."   (Tr. 366).

The next office note is dated March 28, 2013.   Mr. Carrel complained to Dr. Smith of "extreme fatigue."   He weighed 270 pounds.   He told the doctor that he thought he could lose some weight if he had more energy to move.   Dr. Smith diagnosed hypogonadism (low testosterone), low back pain/nerve impingement, and high blood pressure.   He prescribed Norco and Valium for low back

10

pain/nerve impingement (Tr. 376).

The last visit with Dr. Smith was on May 20, 2013.   Dr. Smith noted that plaintiff's low back pain was "chronic" and "unchanged."   He continued plaintiff on Norco and Valium.   (Tr. 381-383).

### 4.    Dr. Smith's Opinion

Dr. Smith completed a Medical Source Statement in September 2012.   He indicated that plaintiff could occasionally lift up to 20 pounds, sit for a total of 3 hours per day and stand/walk for a total of 1 hour per day.   He said that plaintiff needed to be able to shift positions at will and would need to take an unscheduled break every 30 to 60 minutes.   Dr. Smith wrote that "Patient has chronic back pain from thoracic and lumbar degenerative disc disease, arthritis, and foraminal stenosis causing nerve impingement.   This is evident on MRI of thoracic/lumbar spine."   (Tr. 335-340).

### Analysis

The Court agrees that plaintiff's second point regarding the VE's testimony is meritorious and requires remand.

"The Commissioner bears the step-five burden of establishing that the claimant can perform other work that 'exists in significant numbers in the national economy.'"   *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008), citing 20 C.F.R. § 404.1560(c)(2).

The testimony of a VE can constitute substantial evidence to support the ALJ's step five finding, but only if that testimony is reliable.   *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004).   Although the Federal Rules of Evidence do not

apply in administrative proceedings, expert witnesses still must use "reliable methods" to arrive at their conclusions.   "If the basis of the vocational expert's conclusions is questioned at the hearing, however, then the ALJ should make an inquiry (similar though not necessarily identical to that of Rule 702 [Federal Rules of Evidence]) to find out whether the purported expert's conclusions are reliable." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002).   Further, while a vocational expert may give a "bottom line" answer, "the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions."   *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004), citing *Donahue*, 279 F.3d at 446.

Here, plaintiff's counsel challenged the foundation of the VE's opinions as to the number of jobs available to a person who needed a sit/stand option while remaining on task.   The VE agreed that every single job in the categories of small parts assembler, labeler, and mail clerk "has the capacity without a workplace accommodation to sit or stand and keep doing the work."   Plaintiff's counsel pointed out that SSR 83-12 states that "unskilled jobs typically demand that a worker be in a certain place or posture."   She objected to the VE's testimony because "the foundation for her testimony is not reliable and reproducible and statistical, and it's inconsistent with the Social Security's [sic] own regulations." Counsel stated "I think I have the right to request the identification of actual employers in the existing economy where that is the case because it departs so dramatically from SSR 83-12."   The ALJ asked the VE what she based her testimony on, and she answered "Like I said, a combination of both professional

12

experience, my experience of getting people into jobs, observation of jobs, labor market surveys and information regarding [inaudible]."   The ALJ then overruled the objection.   (Tr. 54-58).

> SSR 83-12 states:
>
> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. . . .
>
> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS [Vocational Specialist, i.e., a vocational expert] should be consulted to clarify the implications for the occupational base.

SSR 83-12, 1983 WL 31253, at *4.

Because plaintiff's counsel challenged the foundation of the VE's testimony, the ALJ had a duty to inquire into the basis for the VE's opinions to determine whether her testimony was reliable.   *Donahue, supra; McKinnie, supra*.

ALJ Lewin failed to adequately inquire into the basis for the VE's opinions. She made only a perfunctory inquiry and then, apparently satisfied with the VE's general statement that she based her testimony on her experience and review of labor market studies, overruled counsel's objection.   The Court agrees with

13

plaintiff that this was not sufficient.

The VE's testimony raised obvious issues with regard to reliability and foundation.   She first testified that, if a person needed a "sit/stand option at will" he would not be capable of performing any jobs.   The ALJ then posed a hypothetical question which assumed a person who needed to be able to "shift positions without being off task every 20 to 30 minutes."   The VE testified that this person could do the jobs of small parts assembler, labeler, and mail clerk.   (Tr. 51-52).   These are all unskilled jobs.   (Tr. 50-51).   According to the agency's own statement, "Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." SSR 83-12, *supra*.   The VE's testimony was a departure from SSR 83-12, as counsel rightly pointed out.   The ALJ should have inquired more fully into the basis for the VE's opinion.   *Donahue, supra; McKinnie, supra*.   Further, the data and reasoning underlying her opinion should have been produced at the hearing when counsel questioned the reliability of the expert's testimony.   *McKinnie*, 368 F.3d at 911.   See, *Britton v. Astrue*, 521 F.3d 799, 804 (7th Cir. 2008), suggesting ways that the "available on demand" rule can be applied "to achieve the proper balance between the needs of the claimant to effectively cross-examine the VE and the needs of the Commissioner to hold efficient hearings."

The Court also agrees that the credibility analysis was erroneous.

Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the

14

testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein. The credibility findings of the ALJ are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

SSR 96-7p requires the ALJ to consider a number of factors in assessing the claimant's credibility, including the objective medical evidence, the claimant's daily activities, medication for the relief of pain, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p, 1996 WL 374186, at *3. "[D]iscrepancies between objective evidence and self-reports may suggest symptom exaggeration." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008).

The ALJ is required to give "specific reasons" for her credibility findings. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). It is not enough just to describe the plaintiff's testimony; the ALJ must analyze the evidence. *Ibid.* See also, *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir., 2009)(The ALJ "must justify the credibility finding with specific reasons supported by the record.")

The reasons that ALJ Lewin gave for her credibility assessment are not valid. She pointed out that the medical records were "not particularly voluminous" and that plaintiff had not had physical therapy, no doctor recommended surgery, and he had not looked for a clinic that would provide free treatment. An ALJ may not conclude that a claimant is exaggerating his limitations based on lack of medical

15

treatment or failure to take medication without taking into account the claimant's inability to afford treatment.   *Garcia v. Colvin*, 741 F.3d 758, 761-762 (7th Cir. 2013), citing SSR 96-7p, 1996 WL 374186, at *7-8.   "Inability to pay for medication . . . may excuse failure to pursue treatment."   *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009).

An ALJ may not "rely on an uninsured claimant's sparse treatment history to show that a condition was not serious without exploring why the treatment history was thin."   *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014).

Here, the ALJ acknowledged that plaintiff testified that he had no insurance and could not pay for medical treatment, but she noted that he had spent money on ammunition and cigarettes.   However, the ALJ ignored plaintiff's testimony that he had gone shooting once in the year before the hearing, and he had given it up because of the cost of ammunition and back pain from standing.   (Tr. 32-33). She also ignored his testimony that he rolled his own cigarettes and they cost about $1.00 per pack.   (Tr. 33).   Further, the fact that surgery had not been recommended does not logically indicate that plaintiff did not have severe back pain.   No doctor expressed that opinion, and the ALJ was not competent to make that medical judgment herself.   See, *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015); *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015).

The ALJ also thought that plaintiff's daily activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."   She pointed out that Mr. Carrel testified that he drove a car, cooked, washed dishes, shopped, was able to care for his personal hygiene, swept the

16

garage, built a shelf, and went target shooting.   (Tr. 12).   However, she ignored his testimony that he did these things with difficulty.   For instance, he testified that he usually did things for only 5 to 10 minutes and then sat down for 5 to 10 minutes, and he sat in a chair while cooking.   (Tr. 46-48).   He testified that had had stopped target shooting because of the cost and because standing caused him back pain.   (Tr. 32-33).   He stated in a Function Report that he leaned on the cart while shopping.   (Tr. 225-235).

Plaintiff's sporadic activities do not add up to an ability to sustain full time work.   This is an example "of a problem we have long bemoaned, in which administrative law judges have equated the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation."   *Moore v. Colvin*, 743 F. 3d 1118, 1126 (7th Cir. 2014).   See also, *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013), noting that, while it is appropriate to consider daily activities when evaluating credibility, "this must be done with care."

In sum, the reasons the ALJ gave for disbelieving Mr. Carrel are either contradicted by the record or illogical.   The credibility determination was erroneous and requires remand.   "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding."   *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014).

It is not necessary to address plaintiff's other points, but, as in *Pierce*, the determination of the weight to be given to Dr. Smith's opinion and of plaintiff's RFC

will require "a fresh look" after reconsideration of Mr. Carrel's credibility.   *Ibid.*

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Mr. Carrel was disabled during the relevant period or that he should be awarded benefits.   On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Michael R. Carrel's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:   February 23, 2016.**


**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**

18